Good morning, Your Honors, and may it please the Court. Miles Clark on behalf of Plaintiff Appellant David Leoni, and I'd like to preserve two minutes of my time for rebuttal. Your Honors had asked that we address the issue of jurisdiction, which I will touch on first before proceeding to my main argument. Specifically, whether or not this Court has jurisdiction in absence of the issuance of a final judgment. We would respectfully submit that this Court has The investors mortgage insurance company held that Federal Rule of Appellate Procedure 4.A.2 permits a notice of appeal from a non-final decision to operate as a notice of appeal from the final judgment only when a district court announces a decision that would be appealable if immediately followed by the entry of judgment. That's a 498 U.S. 269. Pennsylvania 276, a 1991 case. 498 U.S. what, counsel? Oh yes, 498 U.S. 269 and the Penn site is 276, Your Honor. Thank you. You're welcome. The Ninth Circuit in subsequent cases has narrowly construed both Rule 4.A.2 and 1st here, but even under this court's narrow construction, however, a premature notice of appeal is valid when quote, all that remained was the clerk's ministerial task of entering a Rule 58 judgment. And that's Kendall v. Homestead Development Company, 17 F. 3rd 291, Penn site 294, a Ninth Circuit case from 1994. I'll spare you the internal quotation from the Fifth Circuit. So in this case, Your Honors, we would submit that all that remained was the clerk's ministerial task of entering a Rule 58 judgment because there is no dispute, I believe, as between the parties that either for purposes of liability or on the merits, the courts disposed of each of Mr. Leone's claims. So if, unless Your Honors have questions about the applicant's jurisdiction in this matter, I'd like to turn to a brief summary of my merits. So, counsel, what do we do with the rule that requires a separate entry of a court? Yes, Your Honor. So that's the practical thing that comes out of this line of cases, is that where the ministerial task of entering judgment under Rule 58 is the only thing that remains before appealability will lie, that the court will find that jurisdiction is appropriate in the appellate court. And the case law that discusses non-ministerial tasks focuses on issues which required more than a simple entry of judgment. So, for example, figuring out the amount of attorney's fees or the amount of pre-judgment interest or whether or not a litigant could leave to amend or where a partial summary judgment was entered but an issue still remained. None of those concerns are here, Your All the court had to do was that ministerial Rule 58 task. If there are any other questions, Your Honors, may I proceed with my merits argument? Yes. Thank you. So just briefly to summarize, we believe the trial court erred in finding that experienced procedures were reasonable beyond doubt for Section 1681 EV purposes when the face of experienced disclosures and reports showed a fundamental inconsistency arising from a systemic flaw in its internal procedures which did not depend at all on the reliability of the source of information. Experienced arguments that a consumer disclosure is not a consumer report run contrary to the plain language of the FCRA, as well as recent persuasive case law. And experienced arguments that Section 1681 EV requires publication of a consumer report to a third party, not the consumer, is contrary to the plain terms of the statute and the realities of modern credit reporting. The trial court also erred in finding that Leone could not establish a negligent violation of Section 1681 GA1 because Leone's lost time was cognizable under the recent controlling authority of Ramirez v. TransUnion, which the court did not have at its disposal at the time it ruled, and Mr. Leone testified adequately about his emotional distress within the Leonean seafood. The trial court also should have found that at least a question of fact remained as to a willful violation of Section 1681 GA1, as experience deviated from a clear reading of the statute. Finally, the trial court erred in failing to consider the applicable CAI certification standards when a class substantially similar to Leone's had recently been certified for settlement purposes. And I believe the proper course in that would be to So as to the Section 1681 EB claim, the Ninth Circuit has held in Shalvey Experian, a 2017 Ninth Circuit case, that the reasonableness of a reporting agency's procedures is a jury question unless the reasonableness is quote beyond question. Here Experian's procedures were unquestionably unreasonable and even if not they should have at least been a jury question. The public records section of Leone's reinvestigation correctly stated the date of the bankruptcy was filed and discharged. However, Leone's Military Star trade line listed an inclusion date after the discharge date. This fundamental incongruity was readily identifiable to Experian if it did nothing more than compare its own document. And you'll find evidence of that on excerpts of records page 596 and 597. But furthermore, your honor, the Experian's internal systems for ones in which the Experian simply failed to incorporate a known problem into an applicable trades manual. And you know the the trial court relied on a persuasive case, Henson from the Seventh and the liability of information from a third party was, the source was required to be unreliable before it could, before EB liability could exist. But in this case, your honor, the evidence showed and I looked in Experian's briefing and I did not see any response to our discussion of the incongruity between the manuals. The incongruity in this case would always exist regardless of whether or not the source of information was reliable. So in this case, unlike perhaps other cases in distinguishable circumstances, here if you say that the source has to be reliable, then Experian could literally take your information from a source, put it in a blender, and jumble it up and then send it off to consumers and there would be no liability for them at all if they could say that, well, Wells Fargo or Bank of America reported that information accurately. It doesn't make sense given the Ninth Circuit's liberal interpretation of the FCRA to have a standard imposing it as a categorical matter for a CRA's reasonable procedures that it depends on whether somebody else is wrong. So let me ask you this, what are the, what is unreasonable about their procedures here? Absolutely, your honor, so they acknowledge in one of their manuals that a bankruptcy inclusion date must be the bankruptcy petition date. However, when they submit a dispute to a furnisher, when that dispute, when a response comes back from the furnisher, what they do is they take the date of the furnisher's response as the new bankruptcy inclusion date. And so if a dispute to Experian after the date of his bankruptcy discharge, then categorically that information will come back to Experian and Experian will say debt included in bankruptcy after the discharge date. The court correctly identified that as a patently incorrect item of information and it doesn't depend at all as to whether Military Star was reporting the information correctly or not because Experian's policies would simply be the same every time. And this is something that our experts pointed out in... So just to make that clear for me, because these documents are less than, it's not easy to follow them, but if you take that, your statement and you look at the documents, the reinvestigation report and you go to Absolutely, Your Honor. So if you look at the Military Star trade line, you will see under, you will see a notation that says, debt included in Chapter 13 bankruptcy on November 8th, 2016. That is the date that Military Star responded to Mr. Leone's dispute that Experian sent him, which is what I said earlier. But Mr. Leone disputed this information after the date of his page before that in the record, in the public record section, that Experian actually got the public record right. So this fundamental inconsistency exists all the time. Experian sends a report of every time. So let me ask you this. How does that, what do you do, at the very beginning of this reinvestigation report, can't tell what page it is, but I think it's U.S. Bankruptcy Court, Nevada, Las Vegas, date filed, date resolved, 2016, Chapter 13 bankruptcy discharged. This item is scheduled to continue on record until March 2018. So what's going on here? Well, Your Honor, we have no dispute with how Experian reported the public record information in that section you trade line after the date of the discharge. If included means petition date, as I think everybody agrees, how could he possibly have have included this in a bankruptcy petition when his bankruptcy was already discharged? That fundamental incongruity is something that was clearly recognizable if Experian did nothing more than look at the face of the document they sent Mr. Leone before they did that. So what did Experian have to do to Well, our experts, and you'll see this among other places in excerpts of record pages 640 to 44, is they could have double-checked that information. They could have not over relied on automated systems in the manner that they did. They could have established human review and in fact Experian's in-house expert, who often serves as their 30B6 witness, said that Experian's programming logic allows them to adopt certain kinds of checks and balances, and she gave examples of those. Why they didn't do that in this circumstance is the question, is the reason they should go to Experian, because they didn't have an explanation for it. In fact, if you look at their brief, they don't address this issue at all, and Your Honor, I see my time is up. Go ahead, Judge Rawlinson has a question. I had a question. The trade line that you are using as the evidence of unreasonableness, is that part of the information that would go into a consumer report? Yes, Your Honor, our argument is that it is, as the district court properly found. The district court found that, and the explanation will take a little longer than 18 seconds. May I answer, yes, answer Judge Rawlinson's question, please? Thank you. So the trial court found, reading the plain language of section 1681 IA6, that a reinvestigation is a consumer report, and because of that, that alone suffices to find that this information was a consumer report for EB purposes. But furthermore, Your Honor, as we pointed out in our reply brief, the a pattern of logic entirely consistent with what the trial court did in this case, which is to say that they said that, and this is also a case under EB talking about another aspect of experience dispute procedures, said that 1681 IA6, the plain language, said that it's a consumer report, and in fact, then the court went to 1681 BA2 of the FBRA, which a person to the written instructions of the consumer to whom it relates. Furthermore, as the court pointed out in its ruling, Experian said that on the face of that reinvestigation, this could be sent to third parties, and we introduced evidence at summary judgment showing that the entire reinvestigation, including this language, should be in there. But there is one more point. Counsel, wait. Where in the record does it say the information that's in the trade line would be reported as part of the consumer report? I didn't see that in the record. Absolutely, Your Honor. So the record is, in terms of where that exists in the record, Experian testified that there is a distinction, and this is clear in the language in what they would call a consumer report. And Experian successfully argued in Shaw that the bits and bytes of data that are shown on a consumer report that would be sent to a credit grantor are different than the plain language that a consumer receives because consumers are not sophisticated. The fact that this phrase does not appear on a consumer report does not mean that the codes themselves would not appear on a consumer report. And let me just get the citation of the evidence that you requested. Just give me one moment, please. Because I thought Experian's evidence was that this information would not be included in a consumer report. Experian relies on a self-serving declaration from a witness, and if you look carefully at that declaration, and I believe it's on paragraph 9 of Kimberly Cave's declaration in their supplemental excerpts of record, Your Honor, she says that that phrase wouldn't appear. But she doesn't say that the underlying information would not. A credit grantor doesn't get, under ordinary circumstances, a credit grantor doesn't get the kind of document that was sent to Mr. Leone. It gets a lot of coded data that then it uses a computer program to reprogram it. So if you look at, there is a credit profile report, which is a kind of consumer reporting product that Experian offers, a very ubiquitous one. There are fields in that credit profile report which align with the items of information on Mr. Leone's military star trade line, which would have been translated over. And let me get you that citation. That's okay, I don't want to use your time with that. Can I ask a question? Judge Pregerson, go ahead. Yeah, just for class cert purposes, aren't there significant individual questions about actual damages? How do you, how do you deal with class cert damages in a case like this? Well, Your Honor, there is a disputed question about whether actual damages are part of the class certification. Experian pointed out in the class certification briefing that we sought, that the face of the case was only a willful violation. Dr. Stan Smith, our economic damages expert, nonetheless provided a model by which actual damages, if desired, could be incorporated. Mr. Leone had, you know, subjected himself to that model and based on that programmatic calculation came up with an amount. So we would submit that if actual damages become an issue on class certification, that we provided competent expert evidence to be able to model. But you're talking about essentially damages, at least a component of which would be emotional distress, right? Emotional distress is, that is accounted for in Dr. Smith's model. How do you, yeah, I get it's accounted for, but I don't get how it works. I don't understand how you can have a thousand people in a class that have widely different impacts for an error and how you could ever find that there is a sufficient connection to those damages where they're not Well, your honor, Dr. Smith has developed a survey which Mr. Leone used and I take your honor's point that that is certainly a more difficult issue on class certification than establishment of a willful violation, which would be a statutory entitlement over either 100 to 1,000 that could be applied class-wide. I think that that determination, as with the remainder of the class certification issues, as we pointed out in our brief, would be most appropriate for the district court to handle in the first instance if there was a remand in this case, if any portion of the court's order that we appealed was reversed. Counsel, just before we hear from your opposing counsel, could you just address for me the basis for your negligence claim? What is it that, what are the damages, what are the damages for the alleged negligence? Just assume negligence, just I want to hear what is it, what are the damages that qualify? Thank you, your honor. So, first of all, Mr. Leone avoided applying for credit for fear of being denied. He also suffered sleepless nights due to issues related to his credit reporting, but and those are sort of the emotional components of the damage that were touched upon a moment ago. But in addition to that, Mr. Leone incurred out-of-pocket damages in the form of transportation costs and lost time, considering inaccurate credit reporting. And here, your honor, I would note that the trial court found, relying on persuasive case law, found that the lost time and transportation were pre-litigation costs which were not cognizable. And I would note that in early 2020 in Ramirez v. TransUnion LLC, for purposes of standing, the Ninth Circuit found that lost time, you know, trying to find an attorney to handle a dispute was a basis to find standing for purposes of damages. So, I would submit that, based on that new controlling authority, that the court's lost time and transportation findings should be reversed. Okay, now we should hear from May it please the court, I'm Victoria Dorfman on behalf of Experian Solutions. Would the court like me to address the jurisdictional issue first? Do we agree with the position of Mr. Clark that there is in fact jurisdiction here, or should I go to the merits? Well, I just had a question about the case that was cited by that first tier case, and that case involved a situation where the appeal was filed before the judgment was entered, and the court said after the judgment was entered, the premature appeal vested jurisdiction. But in this case, we, is counsel still here? Oh, they're here. But in this case, we don't have, ever have entry of a judgment. So, does the, does that case really guide our decision here? Well, there are multiple cases that actually allow the score to reach the same result, and also a Federal Rule of Appellate Procedure 4A, 7B, which says, a failure to set forth the judgment or order on a separate document when required by Federal Rule of Civil Procedure 58A, does not affect the validity of an appeal from that judgment or order. And the other case, does not affect what? The validity of an appeal from that judgment or order. And if I may cite another case by this court, Casey v. Albertsons, Inc., 362 F. Thorde, 1254, Pennside, 1258, 9th Circuit, 2004. Casey cites the Supreme Court decision in Banker's Trust v. Malice, the 1978 case, and to say that although final judgment requires a separate document, neither the Supreme Court nor this Court views satisfaction of Rule 58 as a prerequisite to appeal. And so, the question is whether there was full adjudication of the issues, and whether the evidence, and whether there is evidence of judge's intent that the court's act was final in this matter. And we agree with Mr. Clark that there is. So, I believe under both the rules and the case for in the circuit, there is indeed jurisdiction for this court to proceed. I would note that in the Casey case, we held that the employee was deemed to have waived the separate document requirement. Well, I suppose nobody objected in this case, so it can be taken as a waiver as well. All right, please proceed. Okay, turning to the merits, if I may address a few of the points Mr. Clark made, and to correct a few inaccuracies that I The first issue is Mr. Clark's position is that there is an inconsistency on the face of the consumer disclosure. There is a date, including bankruptcy date, and there is an actual bankruptcy date, and the two, you know, do not match. Many consumers, unfortunately, declare more than one fact that there are two different dates does not mean that there is automatically an inconsistency. Moreover, there is nothing in the record in this particular case that would show that it was experienced procedures that have resulted in this error. And while we acknowledge that there was an FCRA is not a strict liability statute, as this court has said, and in other cases, and so just because there was this error, as long as these two were followed, there is no liability. And so the line that courts have drawn is whether a furnisher of information was unreliable. And in this instance, there is absolutely nothing that Mr. Leone proffered from discovery to show military star was unreliable. And to go back to some of the cases, Mr. Leone's brief, briefs both opening and reply cited. So it's a race Wilson Adams Bradshaw. These are instances where a credit reporting agency was indeed found liable, because it relied on information from a furnisher who either said we had an error, please revise, or they had other information that the furniture is unreliable. So this line of reliability versus unreliability furniture actually works very well as the case will illustrate. And then to address yet another point by Mr. Clark, just because it is possible to create yet another set of checks, or there is another, you know, logic one can implement or put another human being on some particular issue. It does not mean it is reasonable for FCA race to do so. And the server decision from the seventh circuit that the district cited goes into some level of detail about that and explains as to other seventh circuit cases, and some of this report cases, that CRS process an immense amount of information on a daily basis, millions of lines of information. And so therefore, it is up to the point to establish that some procedure would be reasonable, it's not a, well, there is an error, therefore, you should put another human being to just review the information. And in fact, what Mr. Leone's brief on page 39 seems to suggest is exactly what the seventh circuit rejected in server, which is, he says, well, individuals, some human beings should have checked, let's say, pacer. But isn't that sort of a false argument in the sense that it's not necessarily true that you quote another human being. It may be that, you know, there would be expense involved in making your systems more reliable. And it strikes me also as sort of a false argument to argue that there is just an awful lot of data. Because the other side of the argument is, and a lot of people don't realize it, but credit reports equal money. When you make a mistake on somebody's credit report, their car costs more money, or they can't get a house, there are significant issues. So, in a way, you act in sort of a quasi fiduciary role. I say quasi because I'm not describing that role. But it's super important that the information be accurate within the bounds of some level of reasonableness. And there's evidence that a significant portion of your reports list obvious inaccuracies, such as bankruptcy trade line items that post-date bankruptcy discharges. You mentioned multiple bankruptcies. But can you argue that an error rate of around 10 percent on something is not at least reckless? Your Honor, first, I'm not sure where the error rate of 10 percent comes in. But if I could address your argument about this specific issue, as the record actually establishes conclusively, the information about inclusion bankruptcy date doesn't go to any entity that would evaluate consumers' eligibility for credit. And so, I completely take your concern that, yes, you don't want someone's car to cost more because there is an error. But the record side, SER03, which is Kim Cave's declaration that Mr. Clark cited, actually is perfectly clear that inclusion bankruptcy date never goes to anybody. Likewise, the other record side is SER18. But the consumer is dealing with that inaccuracy. And isn't there an expectation that it's going to eventually go to someone if it's not corrected? In this instance, it depends on the kind of information. In this instance, the information does not go to absolutely anyone. There is, as I said, there is a deposition of SER36 witness on SER18, which says it doesn't go to anyone but consumers. And there is Kim Cave's declaration. And there is nothing in the record. And there is no case that... So it's never going to go outside of this information provided to the consumer? That is correct, Your Honor. It's not going to go to any third party ever? No. No, that is exactly what the record established. And there is no case... So what does a requested agency get? What is the information that they get about the bankruptcy? Or at least with respect to this particular trade line? I'm sorry. So you said the bankruptcy date regarding the military star trade line does not go to anybody is whether an account was charged in bankruptcy, what the balance is on the account, and whether there was a bankruptcy. And in this instance, if I may draw Your Honor's attention to record 1385, this is the initial communication, the only I believe communication by Mr. Leone to experience saying, please take a look at my military record account, shows that it's outstanding in the amount of 5,000 plus, it should be zero. And upon the investigation, that was actually fixed. So it was then reflected as zero. And that's the kind of information that goes to entities that would evaluate Mr. Leone for credit, for instance, for a car. Because yes, Your Honor, I agree that if the information was included, it might have had an effect, but it's not. That's what the record establishes. And there is no case anywhere that would state to the country. And so So could you explain one thing to me? I just I want to make sure I understand these documents. Sure. So in the reinvestigation report that was sent to Mr. Leone, it says, at the very beginning, dear David Leone, and it says, please refer to your credit report for update. Is that what does that mean? That means that that's not a credit report that goes to, say, a car dealer. Correct, Your Honor. There is not a perfect match between a so-called personal credit report, which is what Experian provides to consumers so they can check for accuracy of the information. Where's that explained to the consumer in these in this document? I am not sure it says, Your Honor. I look for and I couldn't see any. It looks like this is the credit report that goes to a bank. Experian does provide, as well as other CRAs, more information to consumers than they do to the ultimate recipients, third parties, which evaluate for credit, for instance, soft inquiries. Right. So any time a bank evaluates whether to send you a pre-approved credit card, you know, that is something that you would see on your personal credit report, which is consumer disclosure. But it's not something that would affect your actual credit report that goes to third party and would affect accreditation of credit. So some of this information consumers actually do find very useful. But as this means that the information, let's just assume it's a significant error concerning whether a bankruptcy has been discharged within the past five years, that that information, even if it's an error and shows, let's say, multiple active bankruptcies, that that doesn't affect a snapshot or raw credit score that some sort of company might might want to get in connection with a possible loan. Your Honor, again, the record here is clear. I'm not asking about here. I'm just asking, are you saying that significant errors concerning the existence of bankruptcies have no effect on a person's credit score? Your Honor, it entirely depends on errors. It will also add that what the record shows is that when a consumer says you made an error with respect to my bankruptcy or something relating to my bankruptcy, there are additional procedures in place. There is data quality procedure. Right. But if the consumer doesn't do that, and are you saying that there's under no circumstances a connection between a credit score and incorrect information such as multiple bankruptcies that's provided to a consumer? Your Honor, again, it entirely depends on the type of information. In this case, the only error is included in bankruptcy data. You're focusing back on this case, and I asked you a more general question. What's the answer? Your Honor, it's probably certain aspects of bankruptcy, I'm sure, would affect the score. I don't know how those calculations are made because, again, there are many facets to when the bankruptcy is declared, what accounts are discharged, what are other factors. I was concerned that your argument was it never matters in terms of the credit score. No, Your Honor, my only argument is included in bankruptcy data does not go to any third parties evaluating someone for credit, and it's not included in the completion of credit score. Okay, thank you. Okay, Cass, I just have one last question with regard to these documents, and I wanted you to turn to the ACDV response. Yep. Okay, so, you know, it's one who is not into the consumer credit reporting world. It's a little difficult to read at first, but as I understand it, the critical line is the balance line. Correct, and the balance is shown as zero. So, it shows a balance of zero as of 11-08-2016. Correct. Correct, and then you follow that line on over, and it then shows bankruptcy, correct? I believe so. Filed on 3-22-2011. Yes, I believe that that's what it shows. Yes, yes. So, it's in this format because it's all automated when it returns to Experian, right? Correct, if it returns to Experian, it doesn't go to Mr. Leone. Correct. So, why, as Judge Pregerson mentioned a few moments ago, why is it so difficult to, why can't Experian just record the adequate, you know, the information? I don't understand why they have to come up with a different date for the inclusion date for the bankruptcy. Your Honor, the error clearly has crept in. It's not established in the record how that came about or which policy it came about, and so I will just go back to reiterating that where the furniture is reliable, ACDP procedures have been blessed around the country as being reasonable, and if I may, I see my time is up, if I may spend a minute talking about damages. There are three categories Mr. Leone proffered. One is he says that his credit rating, credit worthiness has been affected, but in reality, because the record is absolutely clear that the inclusion bankruptcy date doesn't go to anyone, the only thing here that will affect his credit worthiness is the actual bankruptcy, which is not surprising because, yes, as Judge Pregerson was discussing, bankruptcy has significant adverse effect, so it has nothing to do with the inclusion bankruptcy date. The second issue, second, he says he was afraid of applying for credit and he suffered emotional distress, but if you take a look at the record ER 2100 and ER 11, it is perfectly clear from Mr. Leone's own testimony that what gave him, what stressed him and his wife out was the fact of bankruptcy. It was not included in bankruptcy date, and then finally, the out-of-pocket and lost time. Courts in the circuit, including in Gregorian and a few others, have said this does not count for damages, and the nearest case that Mr. Leone cites has absolutely nothing to do with this. It's about a willful violation and it's distinguishable on the analysis was for Article 3 standing. The damages, actual damages under FCRA are more narrow. They require proximate cause, and here there is no such thing, and in any event, for all the reasons that you stated. Okay. Thank you. Okay. Counselor, Mr. Leone? Yes, Your Honor. You got one minute. Do you want to make any points? Very briefly, to the question about where the record citations are for the why that information is on a student report, I would refer Your Honors to excerpts to record page 59, which is our response summary judgment brief, as well as the credit profile report on excerpts of record 142 to 51 and excerpts of record 1385, which is the admin report. Additionally, I would refer you to excerpts of record page 1113, and specifically deposition testimony pages 87, lines 20 to 88, line 2, in which I ask whether the form of the substance of the information on a disclosure would be on a credit profile report, and Ms. Messman, experience 30B6, or her in-house expert, replied that it would be. So in response to Ms. Dworkman's statement about whether the information would never be there, the testimony is there. Thank you, Your Honors. Okay. Thank you very much, Counsel. We appreciate all your arguments this morning. The matter is submitted. Judge Wallinson has a question. Yes. Before you leave, I just wanted to ask you, for the record, what are the damages in addition to emotional distress? Yes, Your Honor. Mr. Leone, as you pointed out in the brief, has lost time damages, which were issues related to his review of credit reporting, as well as transportation expenses. And so in addition, Your Honor, even in the absence of actual damages, if this court finds that there is at least a jury question on the willfulness issue, Mr. Leone is entitled to recover statutory damages of $101,000 under 1681N. Got it. Thank you. Okay. Thank you, Counsel. Thank both of you. Matter is submitted at this time.
judges: Paez, Rawlinson, Pregerson